## Case No. 5,385.

### GIBBS v. The TEXAS.

[Crabbe, 236.] [1]

District Court, E. D. Pennsylvania. Jan. 7, 1839.

BOTTOMRY BOND—WHAT WILL AUTHORIZE.

1. To authorize a bottomry bond by a master, it must be given to enable the vessel to proceed on her voyage, and to leave a port where she is detained for necessary repairs, or for claims upon her, and has no funds, credit, or other means of getting money.

2. An anticipated necessity for funds will not justify a bottomry bond.

This was a libel [by C. & J. Gibbs against the schooner Texas] for bottomry. It appeared that the Texas was enrolled as a coaster; that, in April, 1838, being then at Charleston, the captain [Small] took out a new register, and sailed for Mantanzas and a market; that the instructions given to the captain, by the owners, were to take freight from port to port in the United States; that, before sailing for Mantanzas, the captain gave to the libellants a bottomry bond for $538.62; that the items which made up this amount were as follows: Lumber, loaded on board, $485.36; insurance and policy, $9.94; stores furnished, $43.32; and that the Texas had subsequently changed owners. It was alleged that the sale of lumber, which was the principal item of the account, was a mere speculation of the captain and the libellants, and which would not sustain a bottomry bond. As to the charge for insurance, there was no evidence. It was also alleged in answer to the defence, that the lumber was taken on board in order to raise money, by its sale, to pay the port charges in Cuba. The libel was filed on the 13th December, 1838.

Mr. Waln, for libellants.

The defence consists of two parts: First, it is said that there was no necessity for the supply; and, second, that the libellants have forfeited all claim by their delay. As to the first defence, the facts are, that the lumber was necessary to meet the port charges in Cuba. Milward v. Hallett, 2 Caines, 77; The Aurora, 1 Wheat. [14 U. S.] 96; Parmeter v. Todhunter, 1 Camp. 541. As to the delay, it is not such as to work a forfeiture. Wilmer v. The Smilax [Case No. 17,777].

G. M. Wharton, for respondent.

It appears that this bond was not for the loan of money, which a bottomry bond must be for; and we have evidence tending to show the whole transaction to have been a speculation. As to the item of $43.32, alleged to be for stores, it is forfeited. A lien by bottomry will be postponed to subsequent bona fide purchasers or claimants, if the holder of the bond has delayed, unreasonably, to prosecute his claim. Blaine v. The Charles

Carter, 4 Cranch [8 U. S.] 328. The charge for insurance is totally unsupported by evidence, and must be abandoned.

HOPKINSON, District Judge. The necessity that gives authority to a master to hypothecate his vessel, must be to enable her to proceed on her voyage, to leave a port where she is detained, either for necessary repairs, or for claims upon her. Patton v. The Randolph [Case No. 10,837]. There must be no funds there, and no credit, or other means of getting money. There was no money or credit necessary to get this vessel from Charleston. The bond was given for lumber, which was to be applied—taking the libellant's own statement—to be sold in Cuba, to meet expected expenses there. It was not an existing but an anticipated necessity for funds; and the necessity was produced by the captain's going to Cuba, for which there was no necessity.

I cannot doubt, either from the preponderance of testimony, or from the attending circumstances, that this purchase of lumber was, in truth, a trading speculation, either for the captain alone, or for the joint account of the owners; and neither would constitute a good cause for bottomry. As to the small claim for stores furnished the vessel, I do not think that there has been any such delay, or want of diligence, as to forfeit it. We have no evidence whatever of any opportunity but this of proceeding against the schooner. Decree for libellants for $43.32, and costs.